UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LEONARDO CARDENAS GUZMAN,

Petitioner,

v.

WARDEN OF CALIFORNIA CITY
DETENTION FACILITY, et al.,

Respondents.

No.  1:25-cv-01857-DJC-EFB

FINDINGS AND RECOMMENDATIONS

Petitioner is a person detained in an immigration detention facility who has brought a petition for writ of habeas corpus under 28 U.S.C. § 2241.  This matter was referred to the undersigned on December 16, 2025 pursuant to Local Rule 302(c)(17).  ECF No. 5.  For the reasons set forth below, the undersigned recommends the writ be granted.

**BACKGROUND**

**A.  Factual Background**

Petitioner initiated this action on December 15, 2025, seeking a writ of habeas corpus under 28 U.S.C. § 2241.  ECF No. 1.  In his petition, he alleges that he is a Columbian national and is currently detained pending immigration removal proceedings, and has been detained since November 26, 2025.  ECF No. 1 at 5.  Petitioner alleges that he had applied for asylum and, while his immigration proceedings were pending, he was released on an order of supervision.  ECF No. 1 at 5-6.  He alleges that during a regular supervision appointment, he was arrested by Immigration and Customs Enforcement (ICE) without a warrant and without a predetention

1

hearing. *Id*. He further alleges that he has two teenaged children, who are harmed by his ongoing detention. *Id*. at 6. Petitioner asserts one claim for relief, that his due process rights are violated by his ongoing detention without an individualized hearing before a neutral decision-maker wherein he is determined to be either a flight risk or danger to the community. *Id*. at 16-17. He seeks a writ of habeas corpus, declaratory judgment, and attorney's fees and costs. *Id*. at 17.

In the Answer / Return, respondents do not dispute most of petitioner's factual allegations. Respondents contend, and support with documentary evidence, that petitioner is a national and citizen of Columbia, who entered the United States via Mexico and was detained by Border Patrol officers in Texas on October 30, 2022. ECF No. 11 at 2, Ex. 1. He was released from custody under the Alternatives to Detention (ATD) supervision program. *Id.* On January 31, 2023, the Department of Homeland Security issued petitioner a Notice to Appear, Form I-862, charging him with violating sections 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act, and ordering him to appear on June 24, 2024. ECF No. 11, Ex. 2. The record does not contain information indicating how this Notice was resolved. *See* ECF Nos. 11, 12. Respondents agree that petitioner was arrested by ICE when he was at the ICE office for a check-in appointment, on November 26, 2025. ECF No. 11, Exs. 1 & 3. The listed reasons for his arrest were that there were pending removal proceedings against petitioner; records indicate petitioner lacks immigration status or is otherwise removable; and statements made by petitioner indicate he lacks immigration status or is otherwise removable. ECF No. 11, Ex. 3. Per respondents, petitioner had an asylum hearing before an Immigration Judge scheduled for January 26, 2026. ECF No. 11, Ex. 4.

In his Traverse, petitioner does not dispute the facts offered by respondent and additionally represents that he is the sole caregiver of his two teenaged sons, who have suffered emotionally, mentally, and financially since his detention. ECF No. 12 at 2-3.

**B. Procedural Background**

Petitioner initiated this action in propria persona on December 15, 2025, and concurrently filed a motion to proceed in forma pauperis and a motion to appoint counsel. ECF Nos. 1-3. The matter was referred to the undersigned by the district court on December 16, 2025. ECF No. 5.

On December 30, 2025, the undersigned granted petitioner's motions to proceed in forma pauperis and for the appointment of counsel. ECF No. 6. The court further ordered that respondents file an Answer / Response no later than 20 days from the date of the order, and petitioner's reply was due 14 days thereafter. *Id.*; *see* ECF Nos. 9-10 (extending this deadline on the parties' stipulation). It was further ordered that petitioner could not be transported outside the judicial district pending further order of the court. ECF No. 6.

On January 26, 2026, respondents timely filed an Answer / Return. ECF No. 11. Petitioner filed a Traverse on February 6, 2026. ECF No. 12.

**LEGAL STANDARD**

The federal court should grant a writ of habeas corpus under 28 U.S.C. § 2241 when the petitioner is in custody in violation of the Constitution or federal law. *See, e.g., Dominguez v. Kernan*, 906 F.3d 1127, 1134 (9th Cir. 2018). The petitioner bears the burden to prove the unlawfulness of his detention by a preponderance of evidence. *Sepulveda Ayala v. Bondi*, 794 F. Supp. 3d 901, 911 (W.D. Wash. 2025).

**DISCUSSION**

In his petition, petitioner raises a single claim for relief: that his ongoing detention without a bond hearing violates his due process rights under the Fifth Amendment. ECF No. 1 at 7. For the reasons explained below, the undersigned recommends the petition be granted.

To determine whether civil detention violates a detainee's Fifth Amendment procedural due process rights, courts apply the three-part test articulated in *Mathews v. Eldridge. See* 424 U.S. 319, 335 (1976). Under *Mathews*, courts weigh three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.; see also Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989) ("We examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State, . . . the second examines

3

whether the procedures attendant upon that deprivation were constitutionally sufficient").

### 1. First *Mathews* Factor

Here, the first *Mathews* factor favors petitioner. Petitioner has shown that he possesses a significant liberty interest to which his due process rights attach. *See* ECF No. 1 at 5-6; ECF No. 12 at 2-3. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. *See id*. (Due Process requires pre-deprivation hearing before revocation of preparole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In *Morrissey*, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, his "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, a parolee possesses a protected liberty interest in her "continued liberty." *Id.* at 481-84.

////

////

4

Petitioner's release was similar.  Petitioner was released by the Department of Homeland Security in 2022 under a supervised release program, ECF No. 9, Ex. 1 at 2, reflecting the Department's determination that he did not pose a flight risk or danger to the community.  *See Saravia v. Sessions*, 280 F. Supp. 3d 1176 1176 (N.D. Cal. 2017); 8 C.F.R. § 1236.1(c)(8).  In the intervening three years, he has created and maintained ties to his local community, including raising his minor children here.  ECF No. 1 at 5-6; *see also* ECF No. 12 at 2-3.  Respondents do not refute this.  *See* ECF No. 11.  In all material respects, petitioner's liberty interest resembles that of the plaintiff in *Morrissey*.  *See Morrissey*, 408 U.S. at 482; *but see Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) (observing that, "[g]iven the civil context [of the immigration proceeding], [the noncitizen detainee's] liberty interest is arguably greater than the interest of parolees in *Morrissey*").

Respondents argue that the Immigration and Nationality Act, 8 U.S.C. § 1101, et seq., provides for the mandatory detention of petitioner because petitioner is an "applicant for admission" within the meaning of 8 U.S.C. § 1225(b), and, as such, petitioner possesses "no liberty interest" in not being detained that is cognizable under the due process clause.  ECF No. 11 at 3.  This argument is unavailing.  In *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022), the Court of Appeals held that noncitizen aliens have a Fifth Amendment due process interest in freedom from prolonged detention, including in an individualized bond hearing before an immigration judge.  This accords with the Supreme Court's recognition that in *Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001), that "the Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent," and that these due process rights extend to deportation proceedings.  *Demore v. Kim*, 538 U.S. 510, 523 (2003) (holding noncitizen is entitled to due process in deportation proceedings); *Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."); *see also Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) (holding that a noncitizen detained under 8 U.S.C. § 1226(a) possessed a liberty interest in freedom from detention cognizable under the Due Process Clause); *Diouf v. Napolitano*, 634 F.3d 1081, 1086-87 (9th Cir. 2011),

*abrogated on other grounds as recognized in Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1200-01 (9th Cir. 2022) (holding that "[r]egardless of the stage of the proceedings," that a noncitizen finds themselves in the immigration process, "the same important interest is at stake—freedom from prolonged detention").

Respondents argue that, notwithstanding these precedents, 8 U.S.C. § 1225(b) requires the mandatory detention of persons, like petitioner, who are "applicants for admission" under that statutory section. ECF No. 11 at 1. Per respondents, this has the effect of rendering those persons without a liberty interest in not being detained within the meaning of the due process clause of the Fifth Amendment. *Id*. at 1, 3. Respondents concede that, on this point, "[t]here appears to be no substantive distinction between this case and . . . *Mariagua v. Chestnut*, No. 1:25-cv-01744-DJC-CSK and *Ortega v. Noem*, No. 1:25-cv-01663-DJC-CKD (E.D. Cal. Dec. 8, 2025)." *Id*. at 1.

In *Mariagua v. Chestnut*, No. 1:25-cv-01744-DJC-CSK, 2025 WL 3551700 (E.D. Cal. Dec. 11, 2025), and *Ortega v. Noem*, No. 1:25-cv-01663-DJC-CKD, 2025 WL 3511914 (E.D. Cal. Dec. 8, 2025), the court considered and rejected the arguments that respondents advance here. In *Mariagua*, the court held that 8 U.S.C. § 1225(b) did not apply to persons, like petitioner here, who had previously been detained and then released under supervision or parole; for these persons, their re-detention is governed by 8 U.S.C. § 1226(a), which provides that the noncitizen is entitled to a bond hearing before an immigration judge where the noncitizen may show he is not a danger to the community or flight risk. *Mariagua*, No. 1:25-CV-01744-DJC-CSK, 2025 WL 3551700, at *2. In *Ortega*, the court again rejected the "narrow statutory reading" of 8 U.S.C. § 1225(b) advanced by respondents here, and further held that, for due process purposes, the petitioner had acquired a protected liberty interest in remaining out of custody once he was released on parole. *Ortega*, No. 1:25-CV-01663-DJC-CKD, 2025 WL 3511914, at *3.

Respondents concede that petitioner's case is indistinguishable. Thus, for the reasons set forth in *Mariagua v. Chestnut*, No. 1:25-cv-01744-DJC-CSK, 2025 WL 3551700 (E.D. Cal. Dec. 11, 2025), and *Ortega v. Noem*, No. 1:25-cv-01663-DJC-CKD, 2025 WL 3511914 (E.D. Cal.

Dec. 8, 2025), the court finds that petitioner has shown that he had a protected liberty interest in remaining free from detention, by virtue of his having been released previously onto supervised release, and that that liberty interest was not abrogated by 8 U.S.C. § 1225(b)'s provision for mandatory detention, as such provision does not apply to persons, like petitioner, who have been detained initially then released under some form of supervision. *See Mariagua*, No. 1:25-CV-01744-DJC-CSK, 2025 WL 3551700, at *2; *see also Menjivar Sanchez v. Wofford*, No. 1:25-CV-01187-SKO (HC), 2025 WL 2959274, at *3-7 (E.D. Cal. Oct. 17, 2025); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1258-61 (W.D. Wash. 2025); *Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4-9 (E.D. Cal. Sept. 23, 2025).

Accordingly, the court finds that, pursuant to *Morrissey* and its progeny, petitioner does have a liberty interest in his release, implicating his rights under the Fifth Amendment's Due Process clause. *See, e.g.*, *Ortega*, 415 F. Supp. 3d at 970 (reaching the same conclusion for a paroled noncitizen); *Morales-Flores v. Lyons*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *5 (E.D. Cal. Dec. 11, 2025) (same); *Reyes v. Larose, et al.*, No. 25-CV-2938 JLS (VET), 2025 WL 3171743, at *5 (S.D. Cal. Nov. 13, 2025) (same); *Rodriguez Rodriguez v. Kaiser*, No. 1:25-cv-01111-KES-SAB, 2025 WL 2855193, at *5-6 (E.D. Cal. Sept. 4, 2025) (same); *Arzate v. Andrews*, No. 1:25-cv-00942-KES-SKO, 2025 WL 2230521, at *4 (E.D. Cal. Aug. 4, 2025) (same); *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest).

### 2. Second *Mathews* Factor

Petitioner has also demonstrated that the second *Mathews* factor militates in his favor. Without an individualized bond hearing, "the risk of erroneous deprivation," *see Mathews*, 424 U.S. at 335, through petitioner's summary detention is considerable. Petitioner's detention is only justified when the noncitizen poses a flight risk or a danger to the community. *See* 8 U.S.C. § 1226(a); *Zadvydas*, 533 U.S. at 690. As such, due process requires that petitioner be given an

7

individualized bond determination by a neutral factfinder in order to determine whether his continued detention is legally justified.  *See Demore*, 538 U.S. 510.

Here, there appears some factual dispute as to whether petitioner represents a danger to the community justifying his detention.  Petitioner admits he was arrested on a misdemeanor in April 2025, and was "given community service and courses," but the record does not indicate the disposition of this charge.  ECF No. 12 at 2-3; *see* ECF No. 11 at 2, Ex. 1 at 3.  The parties also agree that petitioner was arrested again in August 2025, but these charges were dismissed for lack of evidence.  ECF No. 12 at 2-3; ECF No. 11 at 2, Ex. 1 at 3.  When ICE arrested petitioner in November 2025, however, ICE's arresting document indicates that the basis for his arrest was not his criminal charges or that he represented a danger to the community, but simply because he was subject to removal proceedings generally.  *See* ECF No. 11, Ex. 3; *see also* ECF No. 11 at 3.  Respondents do not represent that petitioner was found to be a danger to the community or a flight risk by any neutral factfinder prior to his November 26, 2025 arrest.  *See* ECF No. 11.  In light of this record, without a bond hearing in which a neutral decisionmaker makes an individualized determination of whether petitioner is a danger to the community or flight risk based on the particular facts of his case, including the facts surrounding his 2025 criminal charges, the risk of erroneous deprivation of petitioner's protected liberty interests is great.  *See Morales-Flores*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *5; *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2617255, at *4 (E.D. Cal. Sept. 9, 2025); *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).  Correspondingly, the probative value of the additional procedural safeguards petitioner seeks—a determination of petitioner's bond-worthiness based on individualized facts, by a neutral factfinder—is high.  *See Morales-Flores*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *5; *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2617255, at *4.

### 3.  Third *Mathews* Factor

Respondents' interest in petitioner's detention is low.  *See Ortega*, 415 F. Supp. 3d at 970.  "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration

8

proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez*, 872 F.3d at 994. The effort and cost required to provide petitioner with procedural safeguards are minimal. *See Lopez*, 2025 WL 3124116, at *4; *Khan v. Noem, et al.*, No. 1:25-CV-01411-EPG-HC, 2025 WL 3089352, at *7 (E.D. Cal. Nov. 5, 2025) ("In immigration court, custody hearings are routine and impose a 'minimal' cost." (citations omitted)).

For these reasons, the undersigned finds respondents' interest in detaining petitioner without an individualized bond determination, at a hearing before a neutral factfinder, is low and does not outweigh petitioner's substantial liberty interest or the risk of the erroneous deprivation of same. Petitioner has thereby shown by a preponderance of evidence that his current detention violates his rights under the due process clause of the Fifth Amendment. Accordingly, petitioner must receive a hearing before a neutral decisionmaker that complies with 8 U.S.C. § 1226(a) and related laws and regulations to justify his continued detention.

**CONCLUSION**

Accordingly, IT IS HEREBY RECOMMENDED that:

1) Petitioner's petition for writ of habeas corpus (ECF No. 1) be GRANTED.

2) Respondents be ORDERED to release petitioner within 30 days from the date of this order unless respondents schedule a hearing before an Immigration Judge where (1) to continue detention the Government must establish by clear and convincing evidence that petitioner presents a flight risk or danger, even after consideration of alternatives to detention that could mitigate any risk that petitioner's release would represent, and (2) if the Government cannot meet its burden, the Immigration Judge order petitioner's release on appropriate conditions of supervision, taking into account petitioner's ability to pay a bond.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections

within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  February 17, 2026

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE